```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JOSE LAMELA and CONSUELA LAMELA,          :
his wife, PER QUOD,                       :
                                          :
                         Plaintiffs,      :    MEMORANDUM
                                          :    DECISION AND ORDER
        -against-                         :
                                          :    CV-06-5366 (BMC)(SMG)
CITY OF NEW YORK and URBITRAN             :
ASSOCIATES, INC.,                         :
                                          :
                         Defendants.      :
----------------------------------------------------------- X
```

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT ---, N.Y:
★ JUN 1 5 2008 ★
P.M. _____
TIME A.M. _____

**COGAN**, District Judge.

This is a diversity action for personal injuries and loss of consortium. Plaintiff Jose Lamela alleges he was injured while working on a site owned by defendant the City of New York and under the supervision and control of defendant Urbitran Associates, Inc. Plaintiff claims that both defendants violated New York State Labor Laws § 200, § 241, and were negligent under common law. Presently before this Court are defendants' respective motions for summary judgment as to plaintiffs' claims and defendants' cross-claims. Because plaintiffs have failed to produce evidence of any facts that could support a finding of liability, defendants' motions for summary judgment as to the plaintiffs' claims are granted. Defendants' motions for summary judgment as to their cross-claims are denied as moot.

## BACKGROUND

Defendant, the City of New York ("City"), through its agent, the Department of Design and Construction ("DDC"), entered into a contract with DeMicco Brothers, Inc. ("DeMicco"), for the reconstruction of a section of Flushing Avenue in Brooklyn, New York in January of

2003. The reconstruction of Flushing Avenue required installation of a new sewer pipe on a portion of Flushing Avenue between Broadway and Humboldt Street. Plaintiff was a foreman for DeMicco overseeing the work. The City had also entered into a contract with defendant Urbitran Associates, Inc. ("Urbitran") for "Resident Engineering Inspection Services" for the project.

As foreman, plaintiff took direction from the DeMicco superintendents on-site. Plaintiff or another DeMicco foreman had to determine how to fill the area between the panels reinforcing the vertical walls of the excavation and the ground behind them. The installation of the sheeting and shoring system was also the responsibility of a DeMicco foreman. In addition, the City's contract with DeMicco stated that DeMicco was to choose the "means and methods of construction," which was defined as "the labor, materials, temporary structures, tools, plant and construction equipment, and the manner and time of their use necessary to accomplish the result intended by this Contract."

Urbitran had inspectors on-site everyday to oversee DeMicco's work. In particular, it had a Resident Engineer, who visited the site throughout the day, supervise the work. The Resident Engineer had the right to reject DeMicco's choice of the means and methods of construction if he believed they would create a hazard.

The incident that is the subject of this action occurred on August 17, 2005. Plaintiff was with his crew performing the backfilling of the excavation for the new sewer pipe. Plaintiff stood approximately one foot from the edge of the trench while speaking to his workers, who were within the trench itself. The trench was about ten feet deep, six feet wide, and 250-350 feet long. Sheeting had been placed along the walls of the excavation to prevent their collapse, and fill had been deposited on the exterior side of the sheeting to the extent that the fill was flush

with the ground. When called by a worker behind him, plaintiff turned to respond, shifting his weight. The ground beneath his right foot collapsed and his right leg sunk into the ground up to his knee. Plaintiff toppled backward into the trench, though his leg remained stuck in the ground, keeping him suspended in the air upside-down, parallel to the wall of the trench. Within fifteen or twenty seconds plaintiff's co-workers were able to free him. Plaintiff was then taken by ambulance to the hospital for treatment of his injuries.

Neither plaintiff nor his co-worker, Pedro Bouzas, saw the hole until the incident. Mr. Bouzas testified that, prior to the incident, when he saw the area, the dirt was "hard, dry."

In their initial complaint, plaintiffs sued the City and a number of its departments for common law negligence and violations of New York State Labor Law § 200[1], § 240, and § 241[2]. Plaintiff sought $5 million in damages for his injuries and his wife, Consuela Lamela, requested $1 million for loss of consortium. Plaintiffs filed an amended complaint, adding a cause of action against Urbitran, and Urbitran and the City each cross-claimed.

Plaintiffs have subsequently narrowed their claims, withdrawing those under Labor Law § 240, and for their §241(6) claim, they rely solely on Industrial Code regulation §23-4.2(h).[3]

---

[1] New York State Labor Law § 200(1) provides, in part: "All places to which this chapter applies shall be constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health, and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section. N.Y. Labor Law § 200(1) (McKinney's 2002).

[2] New York State Labor Law § 241(6) provides: "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work [...], shall comply therewith." N.Y. Labor Law § 241(6) (McKinney's 2002).

[3] Industrial Code § 23-4.2(h) provides, in part: "Any open excavation adjacent to a sidewalk, street, highway or other area lawfully frequented by any person shall be effectively guarded. Such guarding shall consist of a substantial fence or barricade. As an alternative, such guarding may consist of an extension of the sheeting above the ground surface adjacent to the excavation to a height of at least 42 inches above such adjacent street, highway or

# DISCUSSION

I. <u>Summary Judgment Standard</u>

A court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986). The burden of demonstrating the non-existence of any genuine issue of material fact falls on the party moving for summary judgment. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); <u>Rodriguez v. City of New York</u>, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining the applicability of a grant of summary judgment, the court shall "resolve all ambiguities and draw all reasonable inferences against the moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). If a moving party meets their burden, the non-moving party must then present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court may not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." <u>Rodriguez</u>, 72 F.3d at 1061. If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is impermissible. <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29 (2d Cir. 1994).

II. <u>Labor Law § 200 and Common Law Claims</u>

New York State Labor Law § 200 is a codification of the common law duty on the part of landowners and general contractors to maintain a safe workplace. <u>Wojcik v. 42nd Street Dev.</u>

---

other area lawfully frequented by any person. In lieu of such guarding, protection may be afforded by a substantial covering installed over such excavation." 12 N.Y.C.R.R. § 23-4.2(h) (McKinney's 2002).

Project, Inc., 386 F.Supp.2d 442, 455-56 (S.D.N.Y. 2005); Ross v. Curtis-Palmer Hydro-Elec. Co. et al., 81 N.Y.2d 494, 505, 601 N.Y.S.2d 49 (1993). As a result, it is appropriate to analyze the common law and § 200 claims simultaneously. Wojcik, 386 F.Supp.2d at 456.

Both control and notice – either actual or constructive – are required in order to impose liability on a party under § 200. Comes v. New York State Elec. and Gas Corp., 82 N.Y.2d 876, 609 N.Y.S.2d 168 (1993). Although some earlier decisions accepted either notice or control, the New York State Court of Appeals "has not adopted the reasoning of Nagel [v. Metzger, 103 A.D.2d 1, 478 N.Y.S.2d 737 (4th Dep't 1984)] and imposed liability under the statute solely because the owner had notice of the allegedly unsafe manner in which the work was performed." Comes, 82 N.Y.2d at 878 (overruling Nagel).

*A. Control*

"Where a claim under § 200 arises out of alleged defects or dangers arising from a subcontractor's methods or materials, recovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation." Palen v. ITW Mortgage Investments III, Inc., No. 99 Civ 3850, 2003 WL 1907980, *5-6 (S.D.N.Y. Apr. 17, 2003) (internal quotations omitted); Bailey v. Bethlehem Steel Corp., No. 90 Civ 1064s, 1994 WL 586944, *7 (W.D.N.Y. Oct. 4, 1994); Ross, 81 N.Y.2d at 504. "An owner or general contractor does not supervise or control the performance of the work for the purposes of § 200 merely by presenting ideas and suggestions, making observations and inquiries, and inspecting the work." Poulin v. E.I.Dupont DeNemours and Co., 883 F.Supp. 894, 899 (W.D.N.Y. 1994). "Absent any evidence that [the accused party] gave anything more than general instructions as to what needed to be done, as opposed to how to do it, [they] cannot be

held liable under § 200 for common law negligence." O'Sullivan v. IDI Const. Co., 28 A.D.3d 225, 226, 813 N.Y.S.2d 373 (1st Dep't), aff'd, 7 N.Y.3d 805, 822 N.Y.S.2d 745 (2006).

Applying these principles to the instant case, although the City's employees visited the site semi-regularly, sometimes noting safety issues to be fixed, there is no evidence to support the claim that the City instructed plaintiff or DeMicco on how to perform the work. The City's personnel admit to having a somewhat regular presence at the worksite, but "retention of general supervisory control, presence at the worksite, or authority to enforce general safety standards is insufficient to establish the necessary control." Soshinsky v. Cornell University, 268 A.D.2d 947, 703 N.Y.S.2d 550 (3rd Dep't 2000). Plaintiffs' argument that the City was "on notice" and "maintained control" over the site is insufficient. The facts show nothing more than presence and supervisory control, not the specific exercise of control over the particular condition that gave rise to this incident. Since there is no evidence that the City did anything that would demonstrate control over the conditions that allegedly caused the incident, the §200 claim against the City must be dismissed.

As to Urbitran, I reject at the outset its contention that it does not have the authority to control the work done by DeMicco employees and can only issue simple safety directives. The contract between the City and Urbitran states: "In general, the Engineer... shall be responsible for the inspection, management, and administration of the performance of the work, as delineated in the article of the construction contract(s) entitled 'The Resident Engineer." The section entitled "The Resident Engineer," states: "The Resident Engineer shall have the power to inspect, supervise, and control the performance of the work[.]"

However, authority to control is not the issue. The cases make it clear that contractual authority to control is insufficient; the determinative issue is whether the defendant actually

Page 6 of 16

exercises that control in a way that causes the injury. The court in <u>Carberry v. Integral Construction Corp., et al.</u>, No. 94 Civ. 7911, 1997 WL 97841 *4 (S.D.N.Y. Mar. 5, 1997) (citing <u>Ross</u>, 81 N.Y.2d at 505), noted that many courts require more than "mere contractual retention of general supervisory power" to impose liability under § 200. It also observed that "several courts have read <u>Ross</u> to require an even more active role in order to impose vicarious liability under § 200." <u>Id.</u> at *4. Thus, "§ 200 and common law negligence claims must be dismissed in the absence of proof of the owner's *actual* control, notwithstanding the existence of questions of fact regarding an owner's contractual *right* of control." <u>Brown v. New York City Economic Development Corp.</u>, 234 A.D.2d 33, 650 N.Y.S.2d 213 (1st Dep't 1996). Similarly,

> [a]lthough there may have been issues of fact with respect to [the defendants'] contractual control over the work, the record does not establish that they exercised actual control of how the [injury-causing incident was carried out]. The danger here arose from the contractor's method of operation and no liability attaches vicariously under Labor Law § 200 or under the common law.

<u>Elezaj v. P.J. Carlin Construction Co.</u>, 225 A.D.2d 441, 443, 693 N.Y.S.2d 356, 359 (1st Dep't 1996), <u>aff'd</u>, 89 N.Y.2d 992, 657 N.Y.S.2d 399 (1997).

Other cases have also used language suggesting that the exercise of control is required, without explicitly stating it as a requirement. "If an owner or general contractor does not exercise supervisory control over the means or methods employed by the subcontractor to accomplish a task, it will not incur liability pursuant to § 200." <u>Wojcik</u>, 386 F.Supp.2d at 457. <u>Compare</u> <u>Comes</u>, 82 N.Y.2d at 877 (dismissal appropriate because "there was no evidence that defendant exercised supervisory control or had any input into how the [actual event causing the plaintiff's injury would be carried out]."); <u>Bailey</u>, 1994 WL 586944, *7 ("[w]here a claim under § 200 arises out of alleged defects or dangers arising from a subcontractor's methods or materials, recovery against the owner or general contractor cannot be had unless it is shown that

the party to be charged exercised some supervisory control over the operation.") (internal quotations omitted); Sainato v. City of Albany, 285 A.D.2d 708, 727 N.Y.S.2d 741 (3rd Dep't 2001) (summary judgment granted because defendant "did not exercise any direct control over the contractor's employees or manner in which the work was performed").

Were this not the case, broad grants of authority would impose widespread "upstream" liability on general contractors and owners in situations where they played no role in the injury-producing situation. In doing so, it would minimize the distinction between the common law-driven § 200, which is broad but requires control in order to maintain its similarity to common law negligence, and the regulation-driven § 241(6), which is specific but does not require upstream entities to control in order to "place the ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and the general contractor." Rizzuto v. L.A. Wenger Contracting Co., Inc., 91 N.Y.2d 343, 348, 670 N.Y.S.2d 816 (1998) (citing 1969 N.Y. Legis. Ann., 407-8) (internal quotations omitted). It would also potentially expand the scope of common law negligence beyond its established boundaries.

Although Urbitran sometimes issued directives to DeMicco to fix specific issues, this alone is not sufficient to demonstrate the exercise of control. Singh v. Black Diamonds, 24 A.D.3d 138, 140, 805 N.Y.S.2d 58 (1st Dep't 2005) (where "...if [a defendant] observed an unsafe condition, [it] had the authority to find whoever was responsible for the condition and have them correct it or, if necessary, stop the work... [but this] simply indicates [their] general supervision and... is insufficient to trigger liability). Plaintiffs have failed to provide this Court with any evidence that would suggest a triable issue as to whether Urbitran had sufficient control

over the injury-causing event. Urbitran's motion for summary judgment as to the plaintiffs' § 200 and common law negligence claims is granted.

B.  *Notice*

It is undisputed that neither defendant had actual notice of the injury-causing defect; plaintiffs are relying on constructive notice. In order to find constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon v. American Museum of Natural History, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646 (1986). "In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." Taylor v. United States, 121 F.3d 86, 90 (2d Cir. 1997). Moreover, "awareness of a general dangerous condition is not enough to charge a defendant with constructive notice of the particular dangerous condition that caused an injury." Taylor, 121 F.3d at 90.

Constructive notice cannot be found on the undisputed facts here. Plaintiffs have argued that constructive notice was present "based upon the well known phenomenon that the ground immediately adjacent to the opening of any trench, could be unstable." However, according to multiple people present at the time of the incident, including plaintiff, the hole was not visible until plaintiff moved and the ground settled.

The insufficiency of this evidence to raise a factual issue as to notice is demonstrated by Gordon, where the plaintiff slipped on a piece of paper on the steps of a museum and was injured. The plaintiff argued that the museum was on constructive notice since (a) museum employees were generally aware that litter may have been present; and (b) some litter had been there not long before his fall. Both of these arguments were held insufficient to provide

constructive notice, since neither alleged that the museum had notice "of the paper he fell on." Gordon, 67 N.Y.2d at 838. Gordon and Taylor make it clear that awareness of the general likelihood of an event is not sufficient to constitute constructive notice. See Gordon, 67 N.Y.2d at 838; Taylor, 121 F.3d at 90. Neither the City nor Urbitran had notice of the injury-causing event and cannot be held liable under § 200.

The only "evidence" that plaintiffs offer to show that Urbitran should have been specifically aware of this particular condition is a letter from Kenneth Derucher, who is proffered as an expert. In considering the admissibility of expert evidence, this Court must ensure that the evidence is reliable and relevant. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786 (1993); Rosco, Inc. v. Mirror Lite Co., 506 F.Supp.2d 137 (E.D.N.Y. 2007). "A first step in determining the admissibility of expert testimony is to determine whether the witness has the requisite qualifications." Rosco, 506 F.Supp.2d 137; see Zaremba v. Gen. Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004). If an expert lacks the requisite qualifications, any analysis of the reliability of their methods by the court is "superfluous." Id. As the party offering the expert testimony, the plaintiffs bear the burden of establishing admissibility by a preponderance of the evidence. UMG Recordings, Inc. v. Lindor, 531 F.Supp.2d 453, 456 (E.D.N.Y. 2007); Price v. Fox Entm't Group, Inc. 499 F.Supp.2d 382, 386-87 (S.D.N.Y. 2007).

In the present case, plaintiffs wholly disregard the need to lay any foundation for Derucher's opinion. Plaintiffs argue in their brief that Derucher is "a qualified a civil engineer with knowledge, training, and experience in trenching operations as an expert," but there is nothing in the record to support that. Derucher's report is entirely lacking information addressing his qualifications. There is no *curriculum vitae* or any other indicator of professional or academic aptitude in the record.

Even if Derucher is qualified, the letter containing his opinion does not "rest on a reliable foundation." Rosco, 506 F.Supp.2d at 145; Daubert, 509 U.S. at 597. Expert testimony should not be permitted if it is "speculative" or "conjectural." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512 (1997).

The most relevant part of the letter is when Mr. Derucher opines that Urbitran "should have caught the soft soil area as a result of daily inspections or dawn to dusk inspections as it was obvious that it was a spoil area, uncompacted soil area, or possible settlement area or possible superimposed load area..." However, nowhere does Derucher suggest any reasoning or "methodology which the Court can analyze to determine whether his affidavit has the benchmarks of reliability[.]" Dora Homes, Inc. v. Epperson, 344 F.Supp.2d 875, 887 (E.D.N.Y. 2004). Derucher fails to explain what "theories" he used in coming to his conclusions, preventing this Court from determining whether they are generally accepted by the engineering community. Compare Daubert, 509 U.S. 579 ("[w]idespread acceptance can be an important factor in ruling particular evidence admissible...").[4] Derucher does not even indicate his familiarity with the worksite – the absence of any reference to a visit compels the conclusion that he has never visited it – which is particularly relevant given that his letter is based on the alleged

---

[4] Daubert suggests a number of factors which a court may wish to consider in determining the reliability of proffered expert testimony. These include: (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. Daubert, 509 U.S. at 593-4.

"obviousness" of the defect. In short, Derucher's letter is inadmissible and even if admitted, has no probative value.

Plaintiffs argue, rightly, that a defendant should not be able to escape liability for a § 200 claim because they carried out their contractual obligations inadequately. However, unless there is evidence that Urbitran, had it been properly carrying out their contractual obligations, would have found the condition, it is improper to consider it as having notice. One may not reasonably infer that Urbitran would have observed the injury-causing defect without relying on the speculative letter of Derucher and, therefore, plaintiffs' contention of constructive notice is unavailing.

C.  *Inherent Defect*

Plaintiffs argue that liability may be imposed on defendants for a defect in the land, even absent control over the means of work and without notice. This argument is inapplicable here. Cases upon which plaintiffs rely require that the defendants "creat[e] the dangerous condition that allegedly caused [the] injuries." Fernez v. Kellogg, 2 A.D.3d 397, 399, 767 N.Y.S.2d 864 (2nd Dep't 2003). Miller v. Wilmorite, 231 A.D.2d 843, 648 N.Y.S.2d 485 (4th Dep't 1996), upon which plaintiffs rely, holds that

> the duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor's own plan, tools, materials, or methods, or through the negligent acts of the subcontractor occurring as a detail of the work, unless the owner or contractor exercised some degree of supervision or control.

The fact that the defect arose from the backfilling of the area outside the trench is not contested. The process was within the control of DeMicco, there is no evidence that the injury-causing defect was natural to the land, and neither the City nor Urbitran had the requisite control over the situation to be held liable. As a result, plaintiffs' argument fails.

Plaintiffs have failed to raise a factual dispute regarding the § 200 and common law claims. Therefore, the City and Urbitran are entitled to summary judgment on these claims.

III.   Labor Law § 241(6) Claims

The intention of New York State Labor Law § 241(6) is to "place the ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and the general contractor." Rizzuto, 91 N.Y.2d at 348 (citing 1969 N.Y. Legis. Ann., 407-8) (internal quotations omitted). As a result, § 241(6) is non-delegable, and plaintiffs are not required to demonstrate that defendants exercised supervision or control over the worksite in order to recover. Ross, 81 N.Y.2d at 500.

Under § 241(6), the Commissioner of Labor of the State of New York may "make rules to carry into effect the provisions of [§ 241(6)], and the owners and contractors and their agents for such work [...], shall comply therewith." N.Y. Labor Law § 241(6). The Commissioner created the industrial codes upon which plaintiffs rely for this purpose. Because of the potential for overlap between a generalized regulation of the Industrial Code and common law negligence, "[o]nly those violations of those provisions of the Industrial Code which mandate compliance with concrete specifications can form the basis of a § 241(6) action." Wojcik, 386 F.Supp.2d at 454; Ross, 81 N.Y.2d at 505. In other words, there is no direct claim for a violation of §241(6) itself; a plaintiff must prove of a violation of one of its implementing regulations.

"The question of whether a condition is covered by a regulation is a question of law for the court." Wojcik, 286 F.Supp.2d at 454-55; Messina v. City of New York, 300 A.D.2d 121, 123, 752 N.Y.S.2d 608 (1st Dep't 2002). In making that determination, both the parties and conditions at the site must fall within the class to which the regulation was intended to apply. See Ruland v. Long Island Power Authority, 5 A.D.3d 580, 581, 774 N.Y.S.2d 84 (2nd Dep't

2004); Sainato, 285 A.D.2d at 708. If the Court finds that a specific regulation applies to the particular condition and to the class of persons that it protects, then the finder of fact proceeds to decide the causation issue. Rizzuto, 91 N.Y.2d at 350.

Industrial Code § 23-4.2(h) is limited to "open" excavations "adjacent to a sidewalk, street, highway, or other area lawfully frequented by any person..." 12 N.Y.C.R.R. § 23-4.2(h). The issue defendants raise here is whether plaintiff, as a worker on the site rather than a lawful pedestrian, falls within the class of individuals protected by the statute.

Ruland is instructive on this issue. The plaintiff there was injured while working at a plant owned by the defendant as the ground surrounding an excavation settled and caused him to fall. The Second Department found that the provision was inapplicable to the facts of the case and was intended to "protect classes of person other than those involved" in the case. Ruland, 5 A.D.2d at 580. Although the Court's holding is perfunctory, a review of the briefs on appeal indicates that the only point appellant raised regarding § 23-4.2(h) was that it should cover both pedestrians and workers on-site. See Appellant's Brief, Point III, Ruland, 5 A.D.3d 580. With the Second Department having rejected this argument, Ruland thus squarely holds that §23-4.2(h) does not apply in cases brought by workers as opposed to lawful pedestrians.

Although this Court is not bound by the holding of an intermediate state appellate decision on a question of state law, such a decision "does have great weight in informing the court's prediction on how the highest state court of the state would resolve the question." Correspondent Services Corp. v. J.V.W. Inv. Ltd., 524 F.Supp.2d 412, 423 (citing In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 851 (2 Cir. 1992)). The decision of "an intermediate appellate state court... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by persuasive data that the highest court of the state would

decide otherwise." Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (citing West v. AT&T, 311 U.S. 223, 237, 61 S.Ct. 179 (1940)).

I see no such countervailing data here. The language of § 23-4.2(h) tends to support the Second Department in that the regulation is intended to prevent passers-by and the general public from dangers created by excavations. Had the Commissioner sought to cover workers at the site, there would be no reason to limit the scope of the regulation by specific reference to sidewalks, streets, and highways. Without explicitly stating as much, prior courts appear to have agreed with the Second Department, see, e.g., Payne v. 100 Motor Parkway Associates, L.L.C., 45 A.D.3d 550, 846 N.Y.S.2d 211 (2nd Dep't 2007); Sparendam v. Lehr Constr. Corp., 24 A.D.3d 388, 389, 807 N.Y.S.2d 335 (1st Dep't 2005), and this Court has been unable to find any case with similar facts where a defendant was held liable to an worker under § 23-4.2(h).

In addition, the language of both § 200 and § 241 states that the goal is to protect "persons employed therein *or* lawfully frequenting such places." N.Y. Labor Law § 241(6); N.Y. Labor Law § 200(1) (emphasis added). The New York Legislature recognized the difference between workers and those who may lawfully pass an excavation site. Indeed, § 241(6) appears to give the Commissioner authority, through implementing regulations, to protect either workers, those who lawfully pass by a site, or both. However, the language of § 23-4.2(h), the specific regulation at issue, is limited to areas "lawfully frequented by any person;" the Commissioner chose not to include the disjunctive class of "persons employed therein." The Commissioner thus appears to have recognized that workers carrying out their employment within and around excavations cannot be continually barricaded from those excavations.

Given the absence of contrary authority, this Court sees no basis to depart from the Second Department's determination that § 23-4.2(h) is intended to protect passers-by, not

workers at an excavation site, from the dangers arising from excavations. Since plaintiff was not within the class the regulation was intended to protect, § 23-4.2(h) is not applicable in this case. Therefore, both Urbitran and the City's motions for summary judgment regarding the plaintiffs' § 241 claims are granted.[5]

## CONCLUSION

Defendants' motions for summary judgment are granted as to plaintiffs' claims, and denied as moot as to the cross-claims. Each party shall bear their own costs.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
June 13, 2008

---

[5] Consuela Lamela's claim "is a derivative claim and can only be sustained if the defendant has been found to be negligent on the primary claim [of the injured spouse]." Fernandez v. CMB Contracting, 487 F.Supp.2d 281, 287-88 (E.D.N.Y. 2007) (citing Jones v. United States, 720 F.Supp. 355, 369 (S.D.N.Y.1989)); Maddox v. City of New York, 108 A.D.2d 42, 487 N.Y.S.2d 354 (2nd Dep't 1985), aff'd, 66 N.Y.2d 270, 496 N.Y.S.2d 726 (1985).